This is the case of the state of Illinois versus Zia and Sutton. You have before you the 1st District, 2nd Division of the Illinois Appellate Court consisting of Aurelia Paczynski, Cynthia Cobb, and myself, James Fitzgerald Smith. The procedure is as follows. First, we'll let the appellant present their case, and then we will ask questions. We will not interrupt you. And then the appellee will have their opportunity to present their case, and we'll ask questions. Then the appellant will close. If you're ready, we may as well proceed. Go ahead. Okay. Good morning, Your Honors. My name is Maria Harrigan. I represent Mr. Sutton on this appeal. Appellant's argument here is best made by the police body cam video introduced to States Exhibit 1. Two police officers made a routine traffic stop of a car for the passenger's failure to wear a seatbelt. Officer Kaster approached the driver's side, and Officer Cain approached the passenger's side. That's where Mr. Sutton was seated. When the driver could not produce a valid license, Kaster had him exit the car so she could run his name. Throughout this entire time, Cain remained on the passenger side of the car not speaking to Mr. Sutton. Once Kaster determined that the driver's license was suspended, she informed him that she would have to arrest him. She had him step out of the car, and she told him that the car would have to be impounded. Still, Cain remained outside near the passenger side door without speaking with him. The driver was then handcuffed. Still, Cain stayed outside the passenger door. When the driver was finally arrested and over five minutes after the stop, only then did Cain approach the passenger side door. And then when he spoke to Sutton, it was only to inform him that the car would be impounded. Sutton said it would not be a problem as he lived nearby and could get home. At that point, Cain asked Mr. Sutton if he had any weapons. Sutton said no. He asked him again if he had anything illegal. Sutton said no. He then said, so I'm not going to find anything illegal then. Anything like that, implying that Sutton would be searched. At this point, Sutton admitted to having a small amount of marijuana, and the officer said he would write him a citation for that marijuana. He then asked him out of the car, and a subsequent path down revealed the presence of a gun. Cain's questioning after the completion of the stop was improper for the following reasons. First, although Cain testified as if his questioning of Sutton was during the stop while it was going on, it was actually not. Again, the video confirms that it was not until after Officer Castor was done speaking to the driver, telling him he would be arrested and taken in, when he was handcuffed. This conversation can be heard on the body cam video, and you can see him being handcuffed on Cain's body cam video. This is when Cain started talking to Mr. Sutton. This is unlike the case of People v. Veal, cited by the state, where all of the occupants of the car were ordered out of the car as soon as the car was pulled over. Furthermore, unlike Veal, there was no contraband visible in the car, nor did the driver have any contraband on him. In addition, when being questioned once the driver was arrested, the video shows that Sutton was not free to leave. He was seated in the car, and Officer Cain was standing right outside of the car next to him. The video also belies Cain's testimony that Sutton's hands were fidgety. The footage showed Sutton sitting calmly in the car, and to the extent that his hands were visible, he was holding them like this, which is prudent to hold them up where the officer can see them when they're being pulled over by the police. The state attempts to distinguish People v. Staple, which is on all fours with this case, on the grounds that here Sutton was the one not wearing the seat belt, and he could have been ticketed for that offense. However, in the five and a half minutes Officer Cain paced outside the stopped vehicle, he did not make any motions like he was going to write Mr. Sutton a ticket. He didn't take out a notebook. He didn't write anything down, and when he spoke to Sutton, his only concern was telling him that the car would be impounded. He never issued him a ticket for that offense, that petty offense. Staple is actually quite similar to this case. In Staple, like here, the defendant was a passenger pulled over in a valid traffic stop. In Staple, again like here, the officer who initiated this stop discovered that the driver had an invalid license. Like in this case, after the driver's arrest, the officer again approached the car and asked defendant if he had any weapons or contraband. Defendant denied this, saying only he had a bottle of Crown Royal in his pocket. The officer then ordered him out of the car, patted him down, discovering cannabis. In Staple, the court reversed the denial of the motion to suppress on the grounds that once the driver was arrested, the stop was completed, and the further questioning prolonged the stop. Especially like here, in that case also, there was no testimony by the officer that he thought the defendant was armed and dangerous or was committing any other crime. The questions and implications that defendant would be searched were based on a hunch, which cannot support reasonable suspicion or probable cause. In summary, Kane's multiple questions to Sutton about weapons or illegal activity occurred after the stop was completed. They were not induced by any articulable suspicion of criminal activity, and therefore, because Sutton's Fourth Amendment rights were violated here, we ask that you reverse the trial court's denial of the motion to suppress and correspondingly reverse his conviction because without the gun, the state would not be able to prosecute him successfully on retrial. Thank you. Questions? You're saying that the stop ended the minute the driver was handcuffed? The driver was the one who, yeah, the stop ended when the driver was taken out of his car, he was processed, they found out he had an in-vehicle license, he was handcuffed. You're saying the stop ended when the driver was handcuffed and in custody? Yes. And the state is arguing that the stop didn't end until the transport vehicle to impound the car was in place. During all of this five and a half minutes, Kane was still waiting for the car to be impounded. Is that a correct statement? Yes, the transport vehicle had not arrived yet, but the same is true in the case in Staple that we rely on, that the stop had been completed once the driver was arrested and the driver had been arrested and the defendant was out of the car. But in this case, it was the defendant, not the driver, that had actually committed the not having a seat belt on. That is true, but there was no indication, this is a petty offense. We contend that it does not because again, the officer was not, it made no indications that he was going to cite the passenger, Mr. Sutton, for this petty offense. He was about to let, he was telling him he would have to go because he couldn't, he wasn't going to be able to get a ride because the car was going to be impounded. Well, he was going to have to get out of the car in order to walk away. Is that a correct statement? And he didn't have to get out of the car. That's correct. The transport vehicle got there. I mean, the car was still sitting there. The car was sitting there, but the officer was also standing right outside the door. He couldn't have gotten out if he wanted to at that point. Well, he could have gotten out. He probably couldn't have gotten away, but he could have gotten out. Well, a police officer standing outside the car, you would not feel free to open the door and get out of the car when an officer is talking to you. I'm not saying he felt free to leave. I'm just saying that he could have gotten out of the car. But the fact is, it doesn't make any difference because he didn't have to get out of the car until the car was getting ready to be impounded. He could sit there and hope that Officer Kane would just go away, which is probably what he was doing, sitting in the car. But we have no way of knowing why he sat in the car like that. But we do know that the transport vehicle wasn't there. And so the question is, is the stop complete when the driver is in handcuffs, or is the stop complete when the transport vehicle gets there and the passenger has to get out of the car no matter what, because the car is going to get pulled away? Is our contention that the stop was complete once the driver was impounded? Is our contention that the stop was complete when the officer Kane was informing the defendant of this fact? Yeah, but wasn't he still asking the defendant questions? At this point? I mean, he never stopped asking questions. Kane. He asked him, he asked some questions. He received answers, and then he continued to ask questions that were coercive in nature, implying that Mr. Sutton would be searched. I'm sorry, my internet. Having difficulty deciding when you're saying the stop ended. You're saying when the arrest, that's it? Staple doesn't even say that. Once the defendant, once the driver was in custody, then it is our contention that the stop ended and the further questioning prolonged the stop. But the... Under Staples and Rodriguez. But it's the passenger, it's the passenger's conduct that is the cause of the stop in the first place. And that issue is not yet addressed, even during the period of time that the driver is arrested. There's still an outstanding basis for the stop to be in progress, isn't there? The officer Kane did not, did not appear. Officer Kane, it was on Officer Kane's discretion to write a citation for a petty offense. He did not impound it and was wondering how he was going to get home. Did he have to tell him that? I mean, they didn't know why they were stopped. There's no suggestion that they didn't know why they were stopped. I actually don't know if the passenger knew why they were stopped at that point. Was the passenger sitting in the car and could hear the other officer talking to the driver? I assume so, yes. So, it's not likely that he didn't hear why the vehicle was stopped. I mean, there's no suggestion in your pleadings that Mr. Sutton wasn't aware. So, wouldn't there be some expectation while Mr. Sutton is sitting there that, wow, I'm going to get ticketed, maybe I'm going to get in trouble because I didn't have the seatbelt on? I mean, the officer didn't have to disclose to him whether I'm ready to write you a ticket for the seatbelt issue. No, he didn't have to do that, but he didn't. He had this time that he didn't do anything when he was just standing there outside the car and pacing back and forth. There were other officers with the officer that was with the driver as well. It's not like she was there alone with the driver and she didn't pat him down. So, nobody was scared of any kind. They weren't thinking that these people were armed. So, there would be no reason for Kane not to go up and speak to the driver except the stop was being prolonged, it was going to be finished, and he then decided to start asking these coercive questions. Anything further? I have nothing. Jessica, you may go ahead. Your honors, may it on behalf of the people. Your honors, the defendant's entire argument hinges on the idea that the defendant was questioned after the driver was arrested, that the traffic stop was then over, and that the questioning and the detaining of the defendant was a separate encounter that required independent reasonable suspicion. But there's no evidence in the record here as to when the driver was actually arrested. The record only shows that the driver was removed from the car and handcuffed. But it's well established that handcuffing is not synonymous with being under arrest. But even if the driver had been arrested, the lawful traffic stop was not complete at that time. A driver's arrest does not always signal the end of a traffic stop, especially here where the defendant's conduct was the basis for the stop. And importantly, the defendant does not contest the legality of the traffic stop. The car was pulled over for his failure to wear a seatbelt. And handcuffing a driver in that type of situation would not lead a reasonable person to believe that he was free to leave since he committed the traffic violation and he was subject to a ticket. Because that lawful traffic stop was still going on when the defendant was questioned and detained, there's no Fourth Amendment violation that occurred. And that's exactly what this court said in Veal just a few years ago. In that case, this court held that the traffic stop was not over when the driver was arrested because the stop was prompted by the defendant's failure to wear a seatbelt. And since the traffic stop in that case was still going on when the defendant was ordered to exit the car, the police did not need separate, independent, reasonable suspicion. And that's the same thing here. The defendant tries to distinguish Veal, but it's not a successful attempt. It doesn't matter that there was a gun that was found underneath the defendant in that case. And the defendant argues that all of the occupants in that vehicle were ordered out of the car simultaneously, but a close reading shows that that's not the case. In actuality, in Veal, the driver was removed first from the vehicle, handcuffed, and moved to the rear of the vehicle. Same as here. And then the occupants were ordered out. Regardless, those facts didn't factor into this court's decision and this court's ruling that the traffic stop was still ongoing and that the encounter with the defendant was not separate and did not require independent, reasonable suspicion, but rather it was part of the original traffic stop that occurred because of that defendant's seatbelt violation. Again, the same facts as we have here. Also, Veal relied on the U.S. Supreme Court case of Arizona versus Johnson, where the court held that a traffic stop doesn't end until the police no longer need to law and directly on point. The police still needed to control the scene here. The seatbelt violation was still at issue and the car still needed to be impounded. Even so, the defendant makes a variety of arguments. The first saying that the video doesn't show that the defendant was fidgeting, so it can't support an independent basis for his questioning and detention. But again, the police did not need an independent basis of reasonable suspicion because the traffic stop was still going on. Regardless, the video does not clearly show the defendant's hands and body throughout the duration of the stop. And even if it did, at best, it would become a credibility issue. But the trial court here reviewed the video, observed Officer Cain testify, and then made the credibility determination. The defendant also argues that the officer shouldn't have asked the defendant so many questions. But importantly, the defendant does not contest that the police could ask him questions as he was seated in the vehicle, just that once the defendant said no, he shouldn't have asked any more questions. However, as the trial court said below, the police didn't have to take no for an answer. And the officer's questions were not coercive in nature. They weren't aggressive. It was a casual conversation. And the questions did not prolong the stop because the traffic stop was still going on. Again, the car was pulled over because the defendant was not wearing a seatbelt and that issue hadn't been addressed yet. The defendant also argues that the police didn't tell him that he was going to be arrested for that seatbelt violation rather that he just needed to find his own way home. But those things aren't mutually exclusive. The defendant was never going to be arrested for a seatbelt violation. He would have been issued a citation and still needed to is what proved what provided the legal basis for the stop again, which the defendant does not contest. The defendant's reliance on people be staple is misplaced. It's factually distinguishable. In that case, the defendant who was a passenger in the car had not committed any traffic violation. Rather, the car was pulled over because there were no license plates on the vehicle. Here, the defendant was not wearing a seatbelt. That was the reason for the stop. So even if the driver in this case had been arrested, the traffic stop here was not complete. Also, your honors, the pat down here was reasonable. The officer said that he patted him down for safety reasons because in his experience, when a person has drugs on them, they also often have guns or weapons on them and that he had to divert his attention away from the defendant in order to write the citation. So a limited pat down search in this instance was certainly reasonable. In some, the defendant was properly questioned and detained as part of the ongoing lawful traffic stop. It was not a separate encounter. The police did not need independent, reasonable suspicion. There was no Fourth Amendment violation here, and we would ask you to affirm his conviction. Any questions? I just have one just for a point of clarification. The office's rationale for the pat down was because he had to turn away to write the citation. The citation for what? The possession of the marijuana or for the seatbelt? He said he was writing a ticket for the marijuana. Had he already seized the marijuana at that time? I just want to be clear. The officer already had seized the marijuana at that time. Yes, yes. And the pat down just revealed more drugs and the gun. Okay, I just want to be clear. So there were two parts of marijuana found that he'd already found the first one. Then he would turn around to write the citation. He decided to do the pat down first, and that's when he found the gun and the other marijuana. Got it. Thank you. Thanks, Justice Kaczynski. Thank you, Ms. Ball. Thank you. Maria, you may close. Just a couple of points, Your Honors. The Veal case is actually distinguishable because in that case, again, it wasn't like it was minutes that went by while the driver was being processed. As soon as the driver was taken to the back of the car, the passenger was ordered out of the car, and the police immediately saw a weapon there, which gave them all sorts of reasons to Again, the officer had no intention of writing or no indication that he was going to be writing any kind of citation for the seat belt violation. His questioning prolonged the stop, and it was coercive because he implied that the defendant would be searched, and there would be no basis for a search in this case. So for the reasons that we stated in our briefs and in here today, we request that Your Honors reverse the ruling on the motion to suppress in this case. Thank you both. It was kind of interesting, your interaction between you on certain cases. I enjoyed it. So I enjoyed both of your presentations, and I thank you very much for your time, your effort, and your briefs. And we'll let you know as soon as we get our heads together. Thank you.